KRUEGER, Appellant, v. HERMAN MUTUAL INSURANCE COMPANY and another, Respondents.

*January 12—February 1, 1966.*

32

For the appellant there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred Kaftan*.

For the respondent Herman Mutual Insurance Company there was a brief by *Everson, Whitney, O'Melia,*

*Everson & Brehm* of Green Bay, and oral argument by *John C. Whitney.*

For the respondent Merchants Indemnity Company there was a brief by *Cornelisen, Denissen, Kranzush & Kuehn,* and oral argument by *David J. Condon,* all of Green Bay.

GORDON, J. The problem in this case concerns a collapsed compromise. Settlement discussions were conducted by the attorneys, and they thought they had struck a bargain. However, the plaintiff was displeased with the arrangement. We must determine whether the trial court was correct in giving effect to the settlement despite the plaintiff's claim that she neither accepted the settlement nor authorized her attorney to do so.

We shall first dispose of two matters which are not deemed to be crucial and which we believe can be readily resolved. Mrs. Krueger had a claim for her own personal injuries as well as a claim for damages stemming from the death of her husband. There may be some confusion as to which claim or claims the settlement was to cover, but we find no true issue in that regard. Both attorneys involved testified that the settlement figure of $3,000 solely encompassed Mrs. Krueger's claim for her personal injuries and her medical expenses; the judgment which was entered does not purport to relate to the wrongful-death claim.

Another tangent of this case relates to the fact that the learned trial judge determined that there was *apparent* authority in Mr. Vanden Heuvel to make the settlement. That position is not tenable, as the respondents readily concede. Mrs. Krueger had no direct dealings with the insurers, and she did nothing to cloak her attorney with any prerogatives which might have induced the insurers to believe that Mr. Vanden Heuvel had any enlarged authority. *Mattice v. Equitable Life Assurance Society*

(1955), 270 Wis. 504, 508, 509, 71 N. W. (2d) 262; *Hansche v. A. J. Conroy, Inc.* (1936), 222 Wis. 553, 560, 561, 269 N. W. 309; *Domasek v. Kluck* (1902), 113 Wis. 336, 339, 89 N. W. 139.

The trial court's erroneous interpretation of the agency as one in the area of apparent authority is not fatal, since its judgment would irresistibly follow from its other findings. At the end of the trial and before determining the questions of law, the trial court made an express finding that Mr. Vanden Heuvel "was authorized to negotiate to a finality" in behalf of Mrs. Krueger. See *Medlock v. Schmidt* (1965), 29 Wis. (2d) 114, 138 N. W. (2d) 248.

### *The Lawyer's Authority.*

The general retainer of an attorney does not carry with it the power to compromise the client's cause of action. Such power is dependent upon express authority from the client. *Balzer v. Weisensel* (1951), 258 Wis. 566, 568, 46 N. W. (2d) 763; *Seymour State Bank v. Rettler* (1917), 164 Wis. 619, 621, 160 N. W. 1084; *Fosha v. O'Donnell* (1904), 120 Wis. 336, 342, 97 N. W. 924. See also *State ex rel. Derber v. Skaff* (1964), 22 Wis. (2d) 269, 274, 125 N. W. (2d) 561. While his general retainer gave Mr. Vanden Heuvel the right to negotiate on his client's behalf, it is clear that he did not have any right to consummate a settlement prior to the time of his telephone conversation with Mrs. Krueger on April 3, 1961.

The two participants in that conversation gave divergent views as to what was said by them. The appellant suggests that it was inappropriate for counsel to offer testimony as to this conversation which was at variance with his client's recollection. When the issue relates to the extent of the attorney's authority from his client, we see no irregularity in the attorney's testifying as to his knowledge thereof. Indeed, Mr. Vanden Heuvel was

obliged to testify as to the facts as he understood them. See sec. 325.22, Stats. In 1846, Mr. Chief Justice GIBSON observed:

"It is a popular, but gross mistake, to suppose that a lawyer owes no fidelity to any one except his client and that the latter is the keeper of his professional conscience." *Rush v. Cavenaugh* (1846), 2 Pa. (Barr) 187, 189.

The variance between the testimony of Mr. Vanden Heuvel and Mrs. Krueger was resolved by the trial court's conclusion that the attorney had authority to make the settlement; the trial judge termed Mrs. Krueger's consent a "ratification of the settlement." It is clear that the court gave no credence to Mrs. Krueger's interpretation of the conversation wherein she claimed to have stated the following in regard to the proposed $3,000 settlement:

"I just said that I didn't think it was right, that it wasn't what I wanted . . . I told him I didn't think that was right so I didn't accept it."

Mr. Vanden Heuvel was not precise in his testimony as to his settlement negotiations or as to his discussion with Mrs. Krueger. For example, he was not definite as to dates, adding, "I was amazed to discover that this was four years ago." He also acknowledged that Mrs. Krueger was unhappy with the proposed settlement and that their conversation was very brief. Nevertheless, he did testify that he had advised her that the figure was "the highest we could get" and "she says then we will have to accept it, or words of that effect."

The conclusion that the attorney had authority to settle is based upon disputed evidence which the trial court had a right to believe. The holding is not against the great weight and clear preponderance of the evidence and must be sustained.

## *The Written Release.*

After Mr. Kranzush, on behalf of Merchants Indemnity Company, and Mr. Vanden Heuvel arrived at their oral understanding, Mr. Kranzush transmitted two checks totaling $3,000 and a release form to Mr. Vanden Heuvel. The appellant contends that this indicated that the settlement was not intended to be final until the release was actually executed. The appellant also stresses the fact that in transmitting the checks and the release, Mr. Kranzush requested that the release be returned at least one day before the drafts were presented for payment.

We find no merit in this contention on the part of the appellant. There is nothing about the oral settlement agreement which suggested that it was contingent upon the execution of a written release. The trial court held that the attorneys entered into a contract of settlement and that "the refusal by the plaintiff to endorse the settlement draft and to execute the general release did in no manner militate against the efficacy of the settlement agreement." Such findings are not against the great weight and clear preponderance of the evidence and must be sustained.

The record warrants the trier of facts' conclusion that the oral agreement was complete and final at the time it was made and that the execution of a subsequent document did not prevent the oral contract from having immediate effect. *Jungdorf v. Little Rice* (1914), 156 Wis. 466, 470, 145 N. W. 1092.

*By the Court.*—Judgment affirmed.