**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2020[*]
Decided October 15, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-1387

| | |
|---|---|
| LISA M. HARMON,<br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 2:17-CV-1762 |
| WISCONSIN REGIONAL TRAINING PARTNERSHIP,<br>     *Defendant-Appellee*. | Nancy Joseph,<br>*Magistrate Judge*. |

**O R D E R**

Lisa Harmon filed an employment-discrimination claim against her former employer. Not long after the parties negotiated an oral settlement agreement, Harmon changed course. She refused to sign a written agreement formalizing the terms and moved to revoke the oral settlement. The district court denied Harmon's motion,

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

granted the employer's motion to enforce, and terminated the case. Because the district court did not abuse its discretion in enforcing the oral settlement, we affirm.

Harmon's operative pleading—her third amended complaint—alleged that her former employer, the Wisconsin Regional Training Partnership ("WRTP"), violated her rights under Title VII of the Civil Rights Act of 1964.[1] She claimed that WRTP discriminated against her based on her race and terminated her employment in retaliation for filing an internal complaint. The parties consented under 28 U.S.C. § 636(c) to the jurisdiction of the assigned magistrate judge, David E. Jones, who in turn referred the case to Magistrate Judge William E. Callahan for a settlement conference.

At the conference, Harmon was represented by her retained attorney, and the parties agreed to settle. On the record, Magistrate Judge Callahan recited the terms of the agreement, including: (1) WRTP's promise to pay Harmon a sum of money; (2) Harmon's promise to release all claims against WRTP; and (3) WRTP's promise to modify Harmon's employment records to reflect that she had resigned. Magistrate Judge Callahan also acknowledged that Harmon's siblings, who attended the conference, agreed to sign a "side agreement" with Harmon that they would not reveal the terms of the settlement. Magistrate Judge Callahan then asked both parties if he had recited the terms accurately and, after clarifying that the settlement would not affect her lawsuit against her former union, Harmon responded, "yes." A minute entry reflects that the mediation resulted in settlement and the case would be referred back to Magistrate Judge Jones for dismissal.

A few days later, Harmon discharged her attorney, so WRTP emailed a proposed written settlement directly to her. The document incorporated the terms of the oral agreement and a few additional terms. One was a standard provision under the Age Discrimination in Employment Act ("ADEA"), giving Harmon twenty-one days to review the offer and seven days after acceptance to revoke. *See* 29 U.S.C. § 626(f)(1)(F)(i), (f)(1)(G). Harmon refused to sign and emailed the district court to explain that "after further consideration" she "decided not to accept." Harmon argued that the agreement should be revoked because she did not sign anything at the mediation, her siblings did not sign the side agreement, and her attorney had pressured her to settle. The court construed Harmon's letter as a motion to revoke the oral settlement agreement.

---

[1] Harmon also sued her former union. *See Harmon v. Int'l Ass'n of Machinists & Aerospace Workers Dist. 10 AFL-CIO Union Lodge No. 66*, No. 18-CV-74 (E.D. Wis. Feb. 27, 2020), *appeal dismissed*, No. 20-1474 (7th Cir. 2020).

Magistrate Judge Jones held a hearing and, after considering the settlement transcript and the parties' arguments, ruled that the agreement was enforceable. He found that the record showed that Harmon unequivocally confirmed that Magistrate Judge Callahan set forth the terms accurately and agreed to the deal. And the record, he noted, did not support Harmon's allegations about her attorney. Concluding that a change of heart cannot nullify a valid settlement agreement, the magistrate judge denied Harmon's motion. She filed an interlocutory appeal, which we dismissed for lack of jurisdiction.

Back in the district court, the parties consented to the jurisdiction of Magistrate Judge Nancy Joseph, who took over after Magistrate Judge Jones left the court. At a scheduling conference, the court heard and denied Harmon's oral motion to reconsider the denial of her motion to revoke. WRTP then filed a motion to enforce the oral agreement. After briefing, the court granted the motion. It explained that Harmon and her attorney had confirmed on the record that the terms were accurate, and the minute order stated that a settlement was reached and the case would be dismissed once the appropriate documents were filed. Moreover, Harmon had not made her acceptance contingent on approval of a written agreement. Therefore, the court explained, Harmon's issues with the proposed written agreement—that its terms differed from the oral agreement—were immaterial to the oral agreement's enforceability. Finally, the court rejected Harmon's attempt to rely on the ADEA revocation provision because she never signed the agreement. Satisfied that the parties had a meeting of the minds and that Harmon knowingly and voluntarily entered into the agreement, the court granted WRTP's motion and terminated the case.

On appeal, Harmon, now proceeding pro se, does not contest the existence of an oral settlement agreement under Wisconsin law, *see* WIS. STAT. § 807.05, but she argues that the district court should not have enforced it. We therefore review the court's decision for abuse of discretion. *Beverly v. Abbott Labs.*, 817 F.3d 328, 332 (7th Cir. 2016).

Harmon first argues that she did not knowingly and voluntarily enter into the contract because she felt pressure from her attorney to stay at the settlement conference. "An employee's settlement of a Title VII claim must be knowing and voluntary," and we review the district court's factual finding on this point for clear error. *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007). When a plaintiff is represented by chosen counsel during negotiations and settlement, we presume that the settlement was knowing and voluntary. *Id.* at 490–91. Arguments based on the attorney's conduct or

competence are "an improper factor in evaluating whether [the] settlement is knowing and voluntary," and they "neither negate the presumption created by the representation of counsel nor demonstrate the kind of fraud or duress capable of rebutting the presumption." *Id*. Here, Harmon expressed no reservations when she agreed to the settlement. And as Magistrate Judge Jones pointed out, when she sought to revoke the agreement, Harmon failed to provide evidence that her attorney pressured her, let alone evidence of fraud or duress. Thus, the district court did not clearly err in finding that she knowingly and voluntarily agreed to the settlement.

Harmon next contends that the district court should not have enforced the oral agreement because one of its terms—WRTP's promise to modify her employment records from "terminated" to "resigned"—is unlawful. Because Harmon applied for and collected unemployment insurance on the basis that she was fired, she explains, the modification will subject her to liability for fraud. *See* WIS. STAT. § 108.24. We agree with the district court that it is unlikely Harmon's representation that she was fired, which was true when she made it, could subject her to liability for knowingly making a false statement to obtain benefits. Further, Harmon does not explain how this provision could void the entire contract. A court will not enforce a contractual provision when "performance is forbidden by civil or criminal statute or where a penalty is imposed for the action agreed to," *Abbott v. Marker*, 722 N.W.2d 162, 164–65 (Wis. Ct. App. 2006), but Harmon does not contend that modifying her personnel file—in her favor—is itself unlawful. In any case, Wisconsin law allows for the severance of unlawful provisions. *See Baierl v. McTaggart*, 629 N.W.2d 277, 282 (Wis. 2001).

Harmon also argues that the district court should not have enforced the agreement because she has not signed anything and her siblings never signed the confidentiality agreement. Although a mediated settlement agreement is not enforceable if a party's acceptance was expressly contingent on something that never happened, *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 715 N.W.2d 620, 626–27, 631 (Wis. 2006), neither Harmon nor WRTP attached any conditions precedent to their agreement. Instead, when Magistrate Judge Callahan stated that the parties reached a settlement and asked if he set forth the terms correctly, both parties responded, "yes." The parties' mere anticipation of a written document did not nullify their otherwise binding oral agreement. *See Beverly*, 817 F.3d at 334. Harmon further maintains that her attorney privately told her the settlement was contingent on her siblings signing the confidentiality agreement. Yet when Judge Callahan described it as a "side agreement" with Harmon, neither party objected. Moreover, Harmon's siblings were not parties to the settlement. Harmon's mistaken belief about the effect of her siblings' promise of

confidentiality is not a basis for voiding her agreement with WRTP. *See Admiral Ins. Co. v. Paper Converting Mach. Co.*, 811 N.W.2d 351, 362 (Wis. 2012).

Harmon next argues that she had a right to revoke her oral acceptance under the ADEA, as the written settlement proposal provided. WRTP contends that Harmon cannot rely on the provision because she did not execute the agreement. But the right to revoke derives from the statute, not the parties' contract: a former employee over the age of forty has the right to review any agreement releasing an age discrimination claim for twenty-one days and a right to revoke acceptance within seven days. *See* 29 U.S.C. § 626(f)(1)(F)(i), (f)(1)(G). The ADEA, however, does not support Harmon's attempt to revoke her acceptance here. First, Harmon has never claimed (in this lawsuit or in an administrative charge) discrimination based on age, and at the time the settlement was reached, any prospective charge or lawsuit would have been untimely. *See* 29 U.S.C. § 626(d), (e). She therefore had no claim under the ADEA to release, notwithstanding the boilerplate provision in WRTP's written proposal. In any event, that provision could not vitiate Harmon's oral agreement. She accepted the oral settlement within the review period, and she did not notify WRTP or the court within seven days that she intended to revoke; instead, she sent her email eighteen days after the settlement conference.

Lastly, Harmon argues that the written agreement is invalid because its terms are different from the oral agreement. But she is not bound by—nor can she enforce—terms of a written agreement that she never executed. Only the terms put on the record after the settlement conference are enforceable (unless the parties sign an agreement later).

We have considered Harmon's remaining arguments, and none has merit.

AFFIRMED